IN THE CIRCUIT COURT OF THE 4TH
JUDICIAL CIRCUIT, IN AND FOR NASSAU
COUNTY, FLORIDA

PROBATE DIVISION

CASE NO. 16-255-CP

Adversary Proceeding

IN RE ESTATE OF

PETER FRITZ ULLRICH,

           Deceased.
_____/
PETER DAVID ULLRICH,
MONICA ULLRICH, and
STEPHEN ULLRICH,

           Petitioners,

vs.

CLARISSE ULLRICH, individually
and as Personal Representative of the
Estate of Peter Fritz Ullrich,

           Respondent.
_____/

### VERIFIED PETITION FOR DECLARATORY AND OTHER RELIEF

Petitioners, Peter David Ullrich ("Peter"), Monica Ullrich ("Monica"), and Stephen Ullrich ("Stephen") (collectively, the "Ullrich Descendants") hereby file this Verified Petition for Declaratory and Other Relief ("Petition") against Respondent, Clarisse Ullrich ("Clarisse"), individually and as Personal Representative of the Estate of Peter Fritz Ullrich, and in support thereof, the Ullrich Descendants allege as follows:

### General Allegations

1.    The Ullrich Descendants' father, Peter Fritz Ullrich ("Mr. Ullrich Sr.") was a successful businessman who founded and owned numerous companies which successfully bred,

grew, distributed and sold flowers in Latin America, South America, and the United States. *See* Declaration of Peter David Ullrich (hereinafter "Peter Decl.") attached hereto as **Exhibit "A"** at ¶ 2; Declaration of Monica Ullrich (hereinafter "Monica Decl.") attached hereto as **Exhibit "B"** at ¶ 2; and Declaration of Stephen Ullrich (hereinafter "Stephen Decl.") attached hereto as **Exhibit "C."**

    2.      Four of the companies which Mr. Ullrich Sr. founded in Colombia, are:

        a.   Flores Esmeralda;

        b.   Flores de Tenjo;

        c.   Esmeralda Breeding and Biotechnology S.A.S. ("Esmeralda Breeding"); and

        d.   Tecnoviv S.A.S. ("Tecnoviv").

These four companies are hereinafter collectively referred to as the "Colombian Companies." Peter Decl. ¶ 3; Monica Decl. ¶ 2; Stephen Decl. ¶ 2.

    3.      Peter and Monica are Mr. Ullrich Sr.'s son and daughter from his first marriage, and Stephen is Mr. Ullrich Sr.'s son from his second marriage.  Peter, Monica and Stephen are sui juris. *See* Peter Decl. ¶ 4; Monica Decl. ¶ 3; Stephen Decl. ¶ 3.

    4.      As part of his estate planning, Mr. Ullrich Sr. transferred over time shares to the Ullrich Descendants in the Colombian Companies, and accordingly, Peter, Monica, and Stephen became shareholders in the Colombian Companies (with each of the Ullrich Descendants holding a corresponding, distinct ownership interest in the Colombian Companies) as these shares were transferred. *See* Peter Decl. ¶ 6.

    5.      The Ullrich Descendants were not involved in the operations of the Colombian Companies, were not notified of any shareholder meetings, were not invited to participate in the shareholder meetings of the Colombian Companies, and were therefore not involved in the

operations of the Colombian Companies. Nor were the Ullrich Descendants provided with copies of the Colombian Companies' minutes, records, or other details regarding the Colombian Companies. *See* Peter Decl. ¶ 5; Monica Decl. ¶ 4; Stephen Decl. ¶ 4.

6.     Although they were (and are) lawful, and actual, shareholders in the Colombian Companies, the Ullrich Descendants were not aware precisely how many shares they owned in each of the Colombian Companies, or the percentage of each company they owned, moreover they had no way to learn this information except through their father or his representatives, which their father decided not to share.

7.     In January 2015, Mr. Ullrich Sr. married Clarisse as his third wife. At that time, he was 72 years old and Clarisse was 43. *See* Peter Decl. ¶ 7. Clarisse is sui juris.

8.     Unfortunately, approximately five weeks later, in February 2015, Mr. Ullrich Sr. was diagnosed with bladder cancer. *Id.*

9.     Approximately a year later, and only a few weeks before Mr. Ullrich Sr. passed away, the Ullrich Descendants were told by Michael Golden (Mr. Ullrich Sr.'s attorney), that the Ullrich Descendants had small minority interests in certain Colombian Companies and were asked to transfer those certain shares to Mr. Ullrich Sr. and/or Clarisse. *See* Peter Decl. ¶¶ 9-10; Monica Decl. ¶ 5; Stephen Decl. ¶ 5.

10.    Mr. Golden falsely stated to Peter that he had a small minority interest, which was a 6.25% interest (9,375,000 shares) in Flores Esmeralda, a closely-held company. There are a total of 150,000,000 outstanding shares of Flores Esmeralda.

11.    Mr. Golden falsely stated to Monica that she held a small minority interest, which was 5% (2,550 shares) in Flores de Tenjo. Flores de Tenjo is also a closely-held company. There are a total of 51,000 outstanding shares of Flores de Tenjo. Monica Decl. ¶ 5.

3

12.     Mr. Golden falsely stated to Stephen that he had a minority interest in Primacide CIA, LTDA ("Primacide") and Flores Esmeralda, but he was not advised of his 700 share (10%) interest in Tecnoviv. Stephen Decl. ¶ 5.

13.     On June 10, 2016, following Mr. Golden's advice, Peter signed a document purporting to be an "Assignment of Purchased Interests" transferring his 6.25% interest in Flores Esmeralda. In connection with the transfer of his 6.25% interest, Peter would receive $5 million. Peter only executed the "Assignment of Purchased Interests" on the basis and with the understanding that he was transferring 6.25% interest in Flores Esmeralda. In fact, Peter wrote that amount next to his signature on the "Assignment of Purchased Interests." Peter Decl. ¶¶ 11-12, and at Exhibit "A" attached thereto.

14.     On June 14, 2016, Peter and Clarisse entered into an agreement for the sale of Peter's interest in Flores Esmeralda, which was witnessed by Mr. Ullrich Sr. (the "Stock Purchase Agreement"). The Stock Purchase Agreement clarified that Peter was only selling 9,375,000 shares of Flores Esmeralda stock, and that this was only 6.25% of Flores Esmeralda's outstanding shares. The Stock Purchase Agreement also made clear that it *superseded and replaced* the June 10, 2016 Assignment of Purchased Interests, and provided in relevant part:

> (ii) THAT THE SELLER [Peter David Ullrich] is interested in transferring NINE MILLION THREE HUNDRED SEVENTY FIVE THOUSAND (9,375,000) STOCK OPTIONS of FLORES ESMERALDA S.A.S. C.I. and THE BUYER [Clarisse Ullrich] has manifested an interest in becoming the owner of said stock options, as well as all the rights, privileges, obligations and benefits that in the character of stock holder of the Company may correspond to THE SELLER.

*     *     *

> (i) "Stocks" is the joint denomination of the ordinary NINE MILLION THREE HUNDRED SEVENTY FIVE [THOUSAND] (9,375,000) STOCK OPTIONS of the Company, equivalent to 6.25% of the stock options currently in circulation by the Company, owned by the SELLER.

*     *     *

4

EIGHT[H] CLAUSE - AGREEMENT

> This contract of sale and purchase contains the entire agreement achieved between the intervening parties, and replaces any and all communications, opinions, understandings or previous agreements, either verbal or written, between the intervening parties in relation to the subject of this purchase/sale.

*See* Peter Decl. ¶ 13 and Exhibit "A" attached thereto (emphasis added).

15.    On June 10, 2016, following Mr. Golden's advice, Monica signed a document purporting to be an "Assignment of Purchased Interests" transferring her 5% interest in Flores de Tenjo and her 375 shares in Esmeralda Breeding to Clarisse.   Monica only executed the "Assignment of Purchased Interests" on the basis and with the understanding that she was transferring 5% interest in Flores de Tenjo and the amount was indicated in a subsequent Power of Attorney document evidencing the transaction. *See* Monica Decl. ¶ 6.

16.    The "Assignment of Purchased Interests" executed by Monica was subsequently superseded and replaced by a share transfer agreement on or about June 14, 2016, by which Monica understood that she was transferring her ownership of 2,550 shares of Flores de Tenjo. Monica's understanding of the amount of shares being transferred to Clarisse was also evidenced by a Special Power of Attorney dated June 23, 2016, which specifically set forth that Monica was acting in her capacity as the owner of 2,550 shares of Flores de Tenjo when she transferred them to Clarisse (the "Power of Attorney").   The Power of Attorney states in relevant part:

> Monica Alicia Ullrich . . . [in] her capacity acting as holder of 2.550 shares subscribed and paid in FLORES DE TENJO S.A.S. C.I., . . . Considering that I transferred those shares to Mrs. CLARISSE ULLRICH, of legal age, domiciled in the city of Fernandina Beach FL, United States of America, identified with passport No. 538307199. by the sum of ONE HUNDRED TWENTY MILLION AND TWO HUNDRED SIXTY THOUSAND HUNDRED PESOS COLOMBIAN LEGAL TENDER ($120.260.100) Net.[1]

---

[1] Note that in the Colombian documents, commas are considered as periods and vice versa.

Pursuant to the Power of Attorney, Monica also transferred 375 shares in Esmeralda Breeding to Clarisse. *See* Monica Decl. ¶ 7, and Exhibit "B" attached thereto (emphasis added). Likewise, Stephen transferred his interests in Primacide and Flores Esmeralda, but did not know the value of his interest in Tecnoviv when he executed the Assignment of Purchased Interests to Clarisse on June 10, 2016. *See* Stephen Decl. ¶ 5.

17.     In exchange for each of the Ullrich Descendants' transfer of their interest in the Colombian Companies, each of the Ullrich Descendants was to be paid $5,000,000, which was reflected in $3,000,000 promissory notes from Mr. Ullrich Sr. and $2,000,000 promissory notes from Clarisse. *See* Peter Decl. ¶ 14; Monica Decl. ¶ 8; Stephen Decl. ¶ 7

18.     Around the time that the Ullrich Descendants transferred their shares to Clarisse, Mr. Ullrich Sr.'s estate, which includes the Colombian Companies, was worth in excess of $100,000,000.  Also, around that time, and unbeknownst to the Ullrich Descendants, Mr. Ullrich Sr. purportedly transferred essentially all of his assets to Clarisse. However, none of the Ullrich Descendants were offered Mr. Ullrich Sr.'s shares in any of the Colombian Companies before Mr. Ullrich Sr.'s shares in the Colombian Companies were purportedly transferred to Clarisse. *See* Peter Decl. ¶ 15; Monica Decl. ¶ 9; Stephen Decl. ¶ 8.

19.     Mr. Ullrich Sr. died on June 29, 2016, and litigation between Clarisse and the Ullrich Descendants ensued, on the basis that assets were fraudulently transferred from the estate, and there was a dispute as to the Ullrich Descendants' ownership interest in their father's flower companies. *See* Peter Decl. ¶ 16.

20.     The Ullrich Descendants initiated these proceedings to have Clarisse removed as personal representative of their deceased father's estate and to have his purported will set aside.

21.     On February 9, 2018, the parties reached a mediated settlement agreement, but could not agree on the scope of the release. The heart of the dispute between the parties, was whether or not their father transferred all of his interest in the Colombian Companies before he passed away, and whether the Ullrich Descendants had transferred *all* of their ownership interest in the Colombian Companies to Mr. Ullrich Sr. and/or Clarisse, or whether the Ullrich Descendants *still had an ownership interest* in the Colombian Companies at the time their father passed away on June 29, 2016. *See* Peter Decl. ¶¶ 17-18; Monica Decl. ¶ 10; Stephen Decl. ¶ 9.

22.     On February 28, 2018, Clarisse filed a motion to enforce the handwritten settlement agreement, which was heard by this Court on March 26, 2018, the Honorable Judge Steven M. Fahlgren presiding.  At the hearing, the Ullrich Descendants argued that there had been no meeting of the minds regarding the scope of the release. *See* Transcript of March 26, 2018 Hearing (hereinafter "March Hr'g Tr."), attached hereto as **Exhibit "D"** at 15:11-20:22.

23.     The scope of the release was fixed at the hearing on March 26, 2018, when the Honorable Judge Steven M. Fahlgren facilitated the settlement agreement and release now at issue. The release was expressly conditioned on the truthfulness of these representations of fact and statements that Clarisse testified to in court that day.

24.     At the time, the Ullrich Descendants were concerned that they had a greater interest in the Colombian Companies, whether or not their father had transferred all of his interests in the Colombian Companies to Clarisse before he passed away, and whether the shares were transferred to Clarisse after Mr. Ullrich Sr.'s death.

7

25.     Prior to executing the release, Clarisse testified falsely that all shares of Flores
Esmeralda, Flores de Tenjo and Tecnoviv were transferred to Clarisse prior to Mr. Ullrich Sr.'s
death, and that she was the owner of *all* of the shares in these Companies. *See, e.g.,* March Hr'g
Tr., 114:16 – 118:22.

26.     After Clarisse testified, Judge Fahlgren stated again that if her testimony was untrue
the Ullrich Descendants were not bound by either the February 9, 2018 Handwritten Settlement
Agreement or the resulting release, but could pursue the Colombian assets:

| | |
|---|---|
| Peter: | But can I ask a quick question, however. |
| Court: | Sure. |
| Peter: | What would happen, for example, if one of the statements Clarissa made comes to be untrue[]? |
| Court: | So one of her statements in Columbia may reopen the Columbian assets to you to be able to pursue those assets. But she's saying under oath, to her best knowledge and belief, that the lawyer who she named has done everything to effectuate the transfer of those shares. |
| | So there were, I think, four companies, two of which owned the farms and two of which did not. So does that answer your question? |
| Peter: | **So essentially if what she said came to be untrue, then that would reopen claims regarding the Columbian assets?** |
| Court: | **Yes, sir.** |

                              *              *              *

| | |
|---|---|
| Court: | **And so with that clarification, it's your intent to be bound to the settlement agreement as we've hashed out today?** |
| Peter: | **Yes, sir.** |

*See* March Hr'g Tr., 121:16-122:18 (emphasis added).

27.     **The solution, which was confirmed by Judge Fahlgren in open court on March**
**26, 2018, was that the "release" would be made specifically contingent upon the truthfulness**
**of Clarisse's testimony under oath on March 26, 2018**.   If the Ullrich Descendants later

discovered that Clarisse lied under oath (and that for example, they had a greater interest in the Colombian Companies than they transferred to Clarisse), then this specific carve-out in the settlement agreement and release would allow the Ullrich Descendants to reopen and assert their claims regarding the Colombian assets and pursue any ownership interests therein.

28.    Accordingly, the written release that was subsequently executed, and which expressly incorporated the handwritten settlement terms and the March 26, 2018 hearing transcript (the "April 24, 2018 Release" or the "April 24, 2018 Agreement") made it clear that the release and the transfer of the Ullrich Descendants' interest in the Colombian Companies, would only be enforceable only *if Clarisse had testified truthfully* on March 26, 2018, and included the following express provisions:

### Representations by Clarisse Ullrich

Clarisse Ullrich made certain statements under oath on March 26, 2018 which are set forth in the transcript attached hereto as Exhibit l. If it is found that Clarisse Ullrich made false statements, this Court retains jurisdiction to determine the effect of such false statements on this Release. Florida law would apply. The Court references the specific terms of the Agreement as set forth in pages 53 to 126 of the transcript of the hearing held on March 26, 2018.

### The Mediated Settlement Agreement as Modified

This Release is pursuant to the "Mediated Settlement Agreement" entered into by the respective parties on February 9, 2018 (the "Agreement") as modified on the record in open Court on March 26, 2018.

\*    \*    \*

the Release includes within its scope but is not limited to any claims by the Ullrich Descendants to the ownership of any interest in corporations allegedly owned by the decedent Peter F. Ullrich during his lifetime, including but not limited to Primacide S.A.S., Operadora Floricola Operflor Cia Ltda, Flores Esmeralda S.A.S. C.I.; Flores de Tenjo S.A.S. C.I.; Esmeralda Breeding and Bio Technology S.A.S., and Tecnoviv. The only claims excepted from this release are expressly set forth in the following three paragraphs**:**

EXCEPTING AND RESERVING THEREFROM:

(1) any and all Claims of either the Estate Parties or the Ullrich Descendants and arising under the terms of or by reason of breach of the Mediated Settlement Agreement as modified on the record in open court on March 26, 2018.

*See* April 24, 2018 Release attached hereto as **Exhibit "E"** (emphasis added).

29.     The Ullrich Descendants materially relied on Clarisse's statements that she owned all the stock in Flores Esmeralda and Flores de Tenjo because, at a minimum, the Ullrich Descendants would not have agreed to forego their claims to set-aside Mr. Ullrich Sr.'s purported will or remove Clarisse as personal representative of his estate, and would not have sold their interests in the Colombian Companies if they had known that they each actually owned more stock than was represented by Clarisse and Michael Golden. *See* Peter Decl. ¶ 20; Monica Decl. ¶ 12; Stephen Decl. ¶ 11.

30.     After April 2018, the Ullrich Descendants later learned the testimony Clarisse gave on March 26, 2018 was untrue.  Specifically, although Clarisse testified she owned all the stock in Flores Esmeralda, Flores de Tenjo and Tecnoviv, the Ullrich Descendants subsequently discovered, through extensive investigation by their counsel in Colombia, that, at a minimum: **(1) Peter still owns 21,465,000 shares (14.31%) of Flores Esmeralda; (2) Monica still owns 12,750 shares (or 25%) of Flores de Tenjo; and (3) Stephen never transferred 700 of his shares (10%) of Tecnoviv**.  *See* Peter Decl. ¶ 21; Monica Decl. ¶ 13; Stephen Decl. ¶ 12; Maria Torrado Declaration at ¶¶ 16-29 attached hereto as **Exhibit "F."**

31.     In addition, the Ullrich Descendants learned that if their father actually transferred his shares to Clarisse before he passed away, such a transfer would violate the company bylaws, which require that the transferor of the shares first offer those shares to the other shareholders, and the Ullrich Descendants were not offered their father's shares before they were purportedly transferred to Clarisse.

32.     Despite the fact that Peter and Monica remain significant shareholders in Flores Esmeralda and Flores de Tenjo, and despite the fact that Stephen did not transfer his 10% interest in Tecnoviv to Clarisse, Clarisse has caused these companies to file publicly-available corporate disclosures in Colombia purporting to show Clarisse as the 100% owner of Flores Esmeralda, Flores de Tenjo, and Tecnoviv.

33.     In order to verify the truthfulness of Clarisse's statements under oath, Peter engaged Colombian counsel, Brigard Urrutia, to (1) analyze the company records and documents in order to determine his ownership interest, Clarisse's ownership interest, and Mr. Ullrich Sr.'s ownership interest of each of the Colombian Companies, and (2) obtain the necessary documentation from the Colombian Companies to further verify the ownership interest information.

34.     Since August 2018 until now, Brigard Urrutia has been working to obtain further documents from the Colombian Companies directly to establish the true ownership structure of the Colombian Companies: by court proceedings in Colombia to obtain documents and additional information concerning the true ownership composition of each of the Colombian Companies, from the Colombian Companies and from Clarisse. The documents requested from the Colombian Companies would show the Colombian Companies' shareholders' true and accurate ownership interest over time.

35.     However, despite several Court orders by the Colombian civil courts requiring the Colombian Companies and Clarisse to produce documents, Flores Esmeralda, Esmeralda Breeding and Tecnoviv, and Clarisse have refused to produce any documents and have blatantly violated the Colombian Courts' orders to produce documents and provide information.

36.     In addition, over the past two years, Brigard Urrutia initiated a proceeding to have Clarisse appear in court in Colombia and to respond to an interrogatory and a production of

11

documents request.  However, Clarisse failed to appear for such hearings.  Additionally, Brigard Urrutia initiated two proceedings to have María Carolina Estrada, former legal representative of the Colombian Companies, and Silvia Panchi, former member of the board of directors of Flores Esmeralda and Flores de Tenjo, to testify before Colombian courts.  These proceedings continue to be active, however, it has been impossible to locate the witnesses and ensure their appearance before the courts. Indeed, Clarisse has intentionally evaded those proceedings to avoid disclosure of the true ownership structure of the Colombian Companies.

37.     Flores Esmeralda's, Esmeralda Breeding's, Tecnoviv's, and Clarisse's refusal to produce the relevant documents in the respective proceedings, notwithstanding the Colombian court orders, and Clarisse's lack of appearance before the court in the Clarisse Proceeding in Colombia, has made it difficult to obtain additional relevant company records, showing the Ullrich Descendants' interest in the Colombian Companies.

38.     Moreover, Clarisse has been operating Flores Esmeralda and Flores de Tenjo without Peter's and Monica's contractually required participation despite their current status as shareholders. For example, since June 2016, Flores Esmeralda and Flores de Tenjo have respectively held shareholder meetings where corporate acts purportedly were considered, decided, and acted upon, but neither Peter nor Monica were notified of any of these shareholder meetings. *See* Peter Decl. ¶ 23; Monica Decl. ¶ 14.

39.     Moreover, neither Peter nor Monica have received any notice regarding any shareholder meeting, any distributions or other payments issued by the Colombian Companies, or concerning any action taken or contemplated to be taken by any of the Colombian Companies. *See* Peter Decl. ¶ 24; Monica Decl. ¶ 15.

40.     Based upon the misrepresentation that she owns all of Flores Esmeralda and Flores de Tenjo, Clarisse, purportedly unilaterally agreed to sell Flores Esmeralda and Flores de Tenjo, as part of a larger transaction, to a third party, Sunshine Bouquet Company ("SBC"), in violation of Flores Esmeralda's and Flores de Tenjo's Corporate Bylaws. The agreement relating to the deal for the sale of these companies was publicly announced on June 26, 2020. As a result, Peter and Monica, who are shareholders of Flores Esmeralda and Flores de Tenjo, were forced to initiate an action in the United States District Court for the Southern District of Florida, styled as *Peter David Ullrich, et. al. v. Clarisse Ullrich, etc. et. al.,* Case No. 20-cv-23505-BB, in order to preserve the *status quo* and enjoin Clarisse from proceeding with the closing of the transaction.

41.     The SBC transaction was ultimately not consummated on the account of this action, however caused the Ullrich Descendants to incur significant attorney's fees and costs. In addition, it's their understanding that SBC and Clarisse have entered into a lease agreement with the Colombian Companies, but the Ullrich Descendants were not consulted regarding the agreement, were not involved in the negotiations or the decision to enter into the agreement with SBC, and the Ullrich Descendants have not received any distributions or payments in connection with the SBC lease agreement.

42.     On October 5, 2020, Clarisse filed a Motion to Enforce Settlement Agreement and she now falsely claims that "100% of the shares of Colombian Companies vested in Clarisse" and that this was a "key aspect of the settlement". **Accordingly, it appears that Clarisse has improperly used the settlement and releases to fraudulently usurp control over** and convert **Peter's 21,465,000 shares (14.31%) of Flores Esmeralda, Monica's 12,750 shares (or 25%) of Flores de Tenjo, and (3) Stephen's 700 shares (10%) of Tecnoviv**.

13

43.     However, Clarisse cannot now be permitted to "enforce" the settlement agreement and release at issue because, among other things: (i) Clarisse *is not the 100% owner of Flores Esmeralda, Flores de Tenjo, and Tecnoviv*; (ii) *Clarisse made false representations when she testified in open court* on March 26, 2018; (iii) the Ullrich Descendants *did not release* their undisclosed interest in the Colombian Companies; and (iv), the Ullrich Descendants *must be permitted to pursue their interests in the Colombian Companies including, but not limited to, their respective shares in Flores Esmeralda, Flores de Tenjo, and Tecnoviv.*

44.     The Ullrich Descendants have retained undersigned counsel and agreed to pay them a reasonable fee.  The Ullrich Descendants are entitled to payment of their attorneys' fees and costs pursuant to Florida Statute §733.106 and applicable Florida law.

## COUNT I – DECLARATORY RELIEF

45.     The Ullrich Descendants reallege the allegations in paragraphs 1 through 44 as if fully set forth herein.

46.     This is an action for declaratory and other relief pursuant to Florida Statute, Chapter 86 et seq., and pursuant to the release and the Court's inherent jurisdiction.

47.     Clarisse testified that all shares of Flores Esmeralda, Flores de Tenjo and Tecnoviv were transferred to Clarisse prior to Mr. Ullrich Sr.'s death, and that she was the owner of *all* of the shares in these Companies. *See, e.g.,* March Hr'g Tr., 114:16 – 118:22.

48.     Clarisse's testimony was false because after April 2018, the Ullrich Descendants learned that: Peter owns 21,465,000 shares (14.31%) of Flores Esmeralda; Monica owns 12,750 shares (or 25%) of Flores de Tenjo; and (3) Stephen owns 700 shares (10%) of Tecnoviv. However, Clarisse contends that by virtue of the settlement, she owns 100% of these and the other Colombian Companies.

14

49.    Consequently, the Ullrich Descendants are in doubt as to:

(a)    their respective ownership interests in Flores Esmeralda, Flores de Tenjo and Tecnoviv, and what Clarisse has done with their respective ownership interests;

(b)    whether Clarisse's testimony under oath on March 26, 2018 was not true and the effect of any such false statements; and

(c)    whether Clarisse breached the Mediated Settlement Agreement as modified on the record in open court on March 26, 2018 and, if so, the extent of damages as a result of her breach.

50.    Based upon the foregoing, the Ullrich Descendants seek a declaration of rights as to the matters alleged in paragraph 49.

51.    The Ullrich Descendants are entitled to a declaration of rights as to the matters alleged herein, and such a declaration deals with a present, ascertained or ascertainable state of facts or present controversy as to the state of facts.

52.    The Ullrich Descendants' power, privilege or right concerning the matters alleged herein is dependent upon the facts or the law applicable to the facts.

53.    The Ullrich Descendants have a bona fide, actual, present and practical need for a declaration of rights as set forth herein.

54.    The facts necessary for this Honorable Court to declare the rights of the parties herein are set forth in this Petition and Exhibits attached hereto, or are ascertainable by this Honorable Court.

55.    The Ullrich Descendants' interests in this declaration of rights are actual, present, adverse and antagonistic in fact and/or law to Clarisse's interests.

15

56.     All parties whose interests are adverse and antagonistic are before this Honorable Court by proper process.

57.     The relief sought herein is not merely the giving of legal advice by this Honorable Court or the answer to questions propounded from curiosity.

WHEREFORE, The Ullrich Descendants pray that this Court enter a judgment:

(a)     Declaring that Peter owns 21,465,000 shares (14.31%) of Flores Esmeralda; Monica owns 12,750 shares (or 25%) of Flores de Tenjo; and (3) Stephen owns 700 shares (10%) of Tecnoviv; and, in the event the Court so declares that the Ullrich Descendants own these respective shares in such Colombian Companies, then further order that: (i) Clarisse account for all actions taken and all dividends Clarisse received with regard to all such shares; (ii) Clarisse cause ownership all such shares to be respectively restored or transferred to Peter, Monica and Stephen and all dividends that Clarisse wrongfully received and/or distributed from the Colombian Companies, be returned to Peter, Monica, and Stephen; and (iii) Clarisse be precluded or enjoined from transferring, selling or otherwise disposing of such shares to anyone or any entity other than the Ullrich Descendants;

(b)     Declaring Clarisse's testimony under oath on March 26, 2018 not true and the effect of her false statements;

(c)     Declaring that Clarisse breached the Mediated Settlement Agreement as modified on the record in open court on March 26, 2018 and, consequent thereon, determine the extent of damages to the Ullrich Descendants as a result of her breach, and permit the Ullrich Descendants to pursue the Colombian assets.

(d)     Awarding the Ullrich Descendants their reasonable attorney's fees and costs, both in the U.S. and in Colombia, for their prosecution of this cause and all related actions; and

(e)     Granting the Ullrich Descendants such other relief as is just, equitable and proper.

## COUNT II - ACCOUNTING

58.     The Ullrich Descendants reallege the allegations in paragraphs 1 through 44 as if fully set forth herein.

59.     This action for an accounting is pursuant to Florida Probate Rule 5.150(b), the release and/or the Court's inherent jurisdiction.

60.     The Ullrich Descendants are interested persons herein.

61.     After April 2018, the Ullrich Descendants learned that: (1) Peter still owns 21,465,000 shares (14.31%) of Flores Esmeralda; (2) Monica still owns 12,750 shares (or 25%) of Flores de Tenjo; and (3) Stephen never transferred 700 of his shares (10%) of Tecnoviv.

62.     However, despite court proceedings in Colombia to obtain documents to verify ownership interests in these Colombian Companies, Clarisse and the Colombian Companies have refused in defiance of Colombian Court orders to produce any documents and provide the required information.

63.     Moreover, as noted herein, Clarisse has been operating Flores Esmeralda and Flores de Tenjo without Peter's and Monica's contractually required participation despite their current status as shareholders.

64.     It appears that Clarisse has improperly used the settlement and releases to wrongfully usurp control over and convert Peter's 21,465,000 shares (14.31%) of Flores Esmeralda, Monica's 12,750 shares (or 25%) of Flores de Tenjo, and (3) Stephen's 700 shares

17

(10%) of Tecnoviv.   Based on the foregoing, Clarisse should be ordered to account for all such shares, and all actions taken by Clarisse with regard to all such shares including without limitation any and all transactions, shareholder meetings, minutes, records or other documents that effect or involve such shares or any other shares in the Colombian Companies belonging to the Ullrich Descendants, Mr. Ullrich Sr. or, purportedly, Clarisse.

WHEREFORE, The Ullrich Descendants pray that this Court enter a judgment:

(a)     Requiring Clarisse to account for Peter's 21,465,000 shares (14.31%) of Flores Esmeralda, Monica's 12,750 shares (or 25%) of Flores de Tenjo, and (3) Stephen's 700 shares (10%) of Tecnoviv; and all actions taken by Clarisse with regard to all such shares including without limitation any and all transactions, shareholder meetings, minutes, records or other documents that effect or involve such shares or any other shares in the Colombian Companies belonging to the Ullrich Descendants, Mr. Ullrich Sr. or, purportedly, Clarisse;

(b)     Awarding the Ullrich Descendants their reasonable attorney's fees and costs, both in the U.S. and in Colombia, for their prosecution of this cause and all related actions; and

(c)     Granting the Ullrich Descendants such other relief as is just, equitable and proper.

## COUNT III – CONSTRUCTIVE TRUST

65.     The Ullrich Descendants reallege the allegations in paragraphs 1 through 44 as if fully set forth herein.

66.     This is an action in equity to undue Clarisse's unjust enrichment at the expense of and detriment to the Ullrich Descendants and the Estate of Mr. Ullrich Sr. and for the imposition of a constructive trust over:

(a)     Peter's 21,465,000 shares (14.31%) of Flores Esmeralda, Monica's 12,750 shares (or 25%) of Flores de Tenjo, and (3) Stephen's 700 shares (10%) of Tecnoviv; and

(b)     the assets of the Estate of Mr. Ullrich Sr., until (at a minimum) a full accounting has been completed.

67.     Clarisse has wrongfully misappropriated interest in the assets of the Estate of Mr. Ullrich Sr., including the Ullrich Descendants' interests in the Colombian Companies, as well as the distributions, dividends and profits by diverting Company assets to her own use, to the detriment of the Ullrich Descendants.  Clarisse has wrongfully refused to restore such interests to the Ullrich Descendants and the Estate of Mr. Ullrich Sr.

68.     As a direct result of Clarisse's acts and conduct described above, Clarisse has been unjustly enriched at the expense of and to the detriment of the Ullrich Descendants and the Estate of Mr. Ullrich Sr., and the Ullrich Descendants have suffered damages.

WHEREFORE, The Ullrich Descendants pray that this Court enter a judgment:

(a)     Declaring Clarisse to be a constructive trustee of Peter's 21,465,000 shares (14.31%) of Flores Esmeralda, Monica's 12,750 shares (or 25%) of Flores de Tenjo, and (3) Stephen's 700 shares (10%) of Tecnoviv, and of the assets of the Estate of Mr. Ullrich Sr. and held for the benefit of the Ullrich Descendants and/or Mr. Ullrich Sr.; and

(b)     Imposing a constructive trust upon the Ullrich Descendants' respective shares in such Colombian Companies and imposing a constructive trust upon the assets of the Estate of Mr. Ullrich Sr., including but not limited to the Colombian Companies, and any and all distributions, dividends, and profits from the Colombian

Companies, until a full accounting has been completed, together with interest, and deem the same to be held for the benefit of the Ullrich Descendants and/or the Estate of Mr. Ullrich Sr.;

(c)     Restrain Clarisse from disposing of the Ullrich Descendants' respective shares in such Colombian Companies and the assets of the Estate of Mr. Ullrich Sr., including but not limited to the Colombian Companies pending the outcome of this action;

(d)     Order Clarisse to restore to the Ullrich Descendants their respective shares in such Colombian Companies, plus any and all distributions, dividends, profits and interest;

(e)     Declare any individual or entity found by the Court to be a transferee of the Ullrich Descendants' respective shares in such Colombian Companies and the assets of the Estate of Mr. Ullrich Sr. to be a constructive trustee of such shares and assets transferred by Clarisse, and deem those shares and assets to be held by the transferee in constructive trust for the benefit of the Ullrich Descendants; and order Clarisse to recover from any transferee those shares and assets and restrain any transferee from any disposition thereof;

(f)     Awarding the Ullrich Descendants their reasonable attorney's fees and costs for their prosecution of this cause; and

(g)     Granting the Ullrich Descendants such other relief as is just, equitable and proper.

## COUNT IV – CONVERSION

69.     The Ullrich Descendants reallege the allegations in paragraphs 1 through 44 as if fully set forth herein.

70.     Clarisse wrongfully diverted, and converted, Peter's 21,465,000 shares (14.31%) of Flores Esmeralda, Monica's 12,750 shares (or 25%) of Flores de Tenjo, and (3) Stephen's 700 shares (10%) of Tecnoviv.

71.     In addition, Clarisse wrongfully and knowingly diverted funds from the Colombian Companies, including dividends, distributions, and other transfers of funds, to the detriment of the Ullrich Descendants.

72.     Clarisse wrongfully deprived the Ullrich Descendants of their rightful ownership interest in the Colombian Companies.

73.     As a direct and/or proximate result of Clarisse's conduct as described herein, Peter, Monica, and Stephen were damaged.

WHEREFORE, the Ullrich Descendants pray that this Court enter judgment against Clarisse for damages, attorney's fees, costs, and pre- and post-judgment interest, along with such other relief this Court deems just and proper, and demands trial by jury on all issues so triable.

Dated: November 24, 2020.           Respectfully submitted,

                                    SHUTTS & BOWEN LLP

Rutledge R. Liles (FBN 102805)      */s/ Harold E. Patricoff*
John A. Carlisle (FBN 0626716)      Harold Patricoff, Esq.
Ryan J. Mittauer (FBN 0091869)      Florida Bar No. 0508357
The Liles Firm, P.A.                Aleksey Shtivelman, Esq.

21

301 W. Bay Street, Suite 1030
Jacksonville, Florida 32202
Tel: (904) 634-1100
Fax: (904) 634-1234
Emails:  riles@thelilesfirm.com
        spisarek@thelilesfirm.com
        jcarlisle@thelilesfirm.com
        jostwald@thelilesfirm.com
        sperry@thelilesfirm.com
*Co-Counsel for Stephen Ullrich;*
*Peter David Ullrich and*
*Monica Ullrich*

Florida Bar No. 99159
200 South Biscayne Boulevard
Suite 4100
Miami, FL  33131
Telephone: (305) 358-6300
Emails:  hpatricoff@shutts.com
        ASchwartz@shutts.com
        AShtievelman@shutts.com
*Co-Counsel for Stephen Ullrich;*
*Peter David Ullrich and*
*Monica Ullrich*

## VERIFICATION

Under penalties of perjury, I declare that I have read the foregoing, and the facts alleged

are true, to the best of my knowledge and belief.

Dated: November 2⁴, 2020

Peter David Ullrich

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 24, 2020, a true copy of the foregoing has been served via Formal Notice along with the Notice of Declared Adversary Proceeding on Clarisse Ullrich individually and as Personal Representative of the Estate of Peter Fritz Ullrich c/o her Counsel, Darin A. DiBello, Esq., FASI & DIBELLO, P.A.,150 S.E. 2nd Avenue, Suite 1010, Miami, Florida 33131.

*/s/ Harold E. Patricoff*
Harold Patricoff, Esq.

MIADOCS 21264815 5